## UNITED STAES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION AT FRANKFORT

**FILED ELECTRONICALLY**

| | | |
|---|---|---|
| Merck Sharp & Dohme Corp., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No:  3:11-cv-00051-DCR |
| | ) | |
| Jack Conway, in his official capacity as | ) | |
| Attorney General of the Commonwealth of | ) | |
| Of Kentucky, | ) | |
| | ) | |
| Defendant. | ) | |

## COMMONWEALTH'S REPLY MEMORANDUM OF LAW IN SUPPORT OF THE COMMONWEALTH'S MOTION TO DISMISS

# TABLE OF CONTENTS

I.   **Merck's Pleadings Present Two Insufficient Theories of An Alleged .......Constitutional Violation** ................................................................................................ 2

   A.   Merck's Complaint and Preliminary Injunction Briefing Relied on .............Allegations of Improper Delegation and Lack of Control ......................................... 2

   B.   Merck's Response Erroneously Suggests that a Contingent Contract Alone is  Sufficient to State a Constitutional Violation ............................................. 3

II.   **The Commonwealth Has a Duty to Serve the Public Interest and to Seek Justice, Not to be "Neutral."** ..................................................................................... 4

   A.   Government Lawyers Should Zealously Represent Their Client and Have No ..Obligation to Remain Neutral. ................................................................... 5

   B.   Merck's "Neutrality" Theory Would Disqualify All Lawyers and Is Contrary ..to Years of Precedent. ................................................................................. 8

   C.   There Are No Constitutional Concerns With Contingent Agreements When ................ the Government Retains Control of the Litigation. ................................... 9

      1.   *Santa Clara Confirms that, Under Clancy, There is No Concern Where the  Government Retains Control of the Litigation.* ............................. 9

      2.   *The Commonwealth Retains All Control in the Merck I Litigation.* ............. 10

III.   **Merck Has Not Satisfied Rule 8 and Cannot Establish Standing** .............................. 10

   A.   Merck's Allegations of a Constitutional Violation Fail to Satisfy the Pleading ....Standards of *Twombly* and *Iqbal* ....................................................... 10

   B.   Merck Does Not Have Standing to Pursue Its Delegation Theory ................................... 13

Comes now Defendant, Commonwealth of Kentucky *ex rel.* Attorney General Jack Conway ("Commonwealth"), and provides this Reply in Support of the Commonwealth's Motion to Dismiss.  ("Motion") (RE# 17).

The Commonwealth's Motion to Dismiss should be granted because Merck's claims fail as a matter of law or depend on bare allegations of delegation and hypothetical future injury. Merck has asserted two theories in support of its alleged constitutional violation, and neither can survive the Commonwealth's Motion to Dismiss.   First, Merck's Complaint asserts a constitutional violation that depends on allegations of delegation and lack of control.  As stated in the Commonwealth's Motion, Merck cannot simply assert that the Commonwealth has "ceded" all control to Outside Counsel.  Such bald allegations fall short of "plausibly" alleging that Merck is entitled to relief as required by Federal Rule of Civil Procedure 8.  In addition, this theory depends on hypothetical future harm, and potential future harm does not in this instance confer standing.

Second, Merck argues that it has a constitutional right to a proceeding free from lawyers who may have a "potential bias."  RE#28 at p. 10.  Merck repeatedly refers to this as the Commonwealth's "duty to remain 'neutral'" and complains that Outside Counsel "is not neutral."  *See e.g.*, *id.* at 8.  This alleged constitutional violation should be dismissed because it has no basis in law, is contrary to Supreme Court precedent, and is inconsistent with Merck's claim of irreparable harm.

Merck has failed to allege a plausible constitutional violation.  Instead, Merck filed briefs that contain policy arguments cobbled together from baseless allegations relating to the Commonwealth's use of Outside Counsel in *Merck I*.  While the Commonwealth recognizes Merck's desire to limit its ability to pursue its *Merck I* claims, the Attorney General was elected

1

to pursue justice in the public interest and has broad discretion to determine how to do so.  No Court has found the retention of outside counsel by an Attorney General to be unconstitutional and Merck has provided no justification for why this Court should now rule differently.

I.      **Merck's Pleadings Present Two Insufficient Theories of An Alleged Constitutional Violation**

Merck's pleadings assert both a "delegation" theory and a "neutrality" theory of a due process violation.  Although Merck ambiguously conflates the two across its pleadings, the two theories are unique yet conflicting, and each fails for different reasons.

A.      <u>Merck's Complaint and Preliminary Injunction Briefing Relied on Allegations of Improper Delegation and Lack of Control</u>

The Commonwealth's Motion to Dismiss was directed at the "delegation" theory presented in Merck's Complaint and subsequently emphasized in its Motion for a Preliminary Injunction.  Merck's Complaint alleges that the Kentucky AG improperly delegated coercive powers and that this delegation of powers has tainted the fairness of the underlying KCPA action.  RE#28 at p. 3-4.  In support of this theory, Merck depends on conclusory allegations that the Commonwealth has ceded control of the litigation, that Outside Counsel has assumed the lead role in the prosecution of the case, and that the Commonwealth intends to permit Outside Counsel to continue 'leading' the prosecution of *Merck I*.  RE#1 at ¶¶ 16, 17, 25.  According to Merck, "[a]s a direct and proximate result of defendant's actions, coercive powers have been delegated to Outside Counsel and, consequently, Merck's right to due process under the Fourteenth Amendment has been infringed.  *Id.* at ¶¶ 29, 31.

Merck's Motion for a Preliminary Injunction relies on additional bare allegations of delegation.  Merck states that the Commonwealth delegated coercive powers to an outside firm, that the Attorney General transferred his enforcement authority to private counsel, that the state

improperly delegated its coercive power to outside lawyers, that the Attorney General has not exercised any meaningful control over the litigation, and that the preliminary injunction would return that discretion to the AG and divest it from outside lawyers.  RE#2 at p. 1, 4, 14-15, 18. According to Merck, "the AG's outsourcing of his prosecutorial authority . . . threatens to violate the due process clause of the U.S. Constitution." RE # 26 at p. 3.

As the Commonwealth argued in its Motion, to the extent Merck's claim depend on allegations of delegation, its Complaint should be dismissed because it depends on bare and conclusory allegations and hypothetical injury.  RE#17 at p. 8-17, 20-27; *see also* Section III, *infra*.

> B.     <u>Merck's Response Erroneously Suggests that a Contingent Contract Alone is Sufficient to State a Constitutional Violation</u>

After first advancing the "delegation" theory, Merck now contends that its due-process claim does not turn on whether the Attorney General's contract stipulates that the Attorney General retain control of the litigation.  *See* RE#28 at p. 2.  Instead, Merck now asserts that it has a right to be free from any potentially biasing influences, and that Outside Counsel's pursuit of civil penalties amounts to bias.  *Id.* at 4.  Merck's briefing conflates its claimed constitutional right to a neutral prosecutor with the established right to a fair tribunal. *Id.* at 17.  Merck argues, incorrectly, that plaintiffs and prosecutors have the same "neutrality" duty as judges.  *Id.* at 18. Merck alleges its constitutional rights are protected only if the Commonwealth's lawyers can remain neutral.  *Id.* at 8.

According to Merck, its argument "raises a pure question of law."  *Id.* at p. 6.  No matter how much control the Commonwealth extends over Outside Counsel, Merck contends that contingent arrangements are biased as a matter of law because Outside Counsel is financially interested in the outcome.  *Id.* at 9.  Accordingly, Merck's injury is the subjection to a

3

proceeding that is tainted by an unconstitutional biasing influence.   *Id.* at 6.   The supposed "taint" is simply the contingent arrangement that began when the contingency fee contract was signed.[1]   *Id.* at 14.   According to this theory, *anytime* there is a contingent arrangement, Merck's constitutional rights are violated.   But, Merck offers no substantive legal support for this position, and it has been handily dismissed by federal courts adjudicating similar challenges.   *See generally, United States ex rel. Kelly v. Boeing Company*, 9.F.3d 743, 759 (9th Cir. 1993) (noting that appellee Boeing could not cite persuasive authority for its position that a relator's promise of a reward for litigating the government's claims pursuant to the False Claims Act created a conflict of interest).

## II.        The Commonwealth Has a Duty to Serve the Public Interest and to Seek Justice, Not to be "Neutral."

The Commonwealth does not dispute that Merck is entitled to a fair tribunal, that the Attorney General has a duty to serve the public interest in *Merck I*, and that lawyers representing the government have a duty to seek justice.   However, the relevant case-law confirms that the retention of Outside Counsel in *Merck I* does not run afoul of any of those entitlements or duties.

As an initial matter, Merck has not challenged the neutrality or fairness of the tribunal. There is no dispute that any penalties imposed on Merck will be decided by a neutral judge. KRS § 367.990(2).   Furthermore, every Court that has considered this issue has found the other

---

[1] Merck's neutrality argument is detrimentally inconsistent with its claim of "irreparable harm" in its preliminary injunction briefing.   If Merck chooses to argue that the "due-process injury accrued *at the moment* the AG retained contingency-fee counsel," Merck must explain why it waited almost one full year to initiate suit.   RE #28 at p. 4 (emphasis added); *see also*, *id.* at p. 14.   When the Commonwealth noted that Merck's delay in bringing this lawsuit undermined its claim of irreparable injury, RE#15 at pp. 32-34, Merck responded that "it made little sense…to commence a federal lawsuit" seeking to disqualify counsel "while the litigation was dormant."   RE#20 at p. 13.   But if Merck was constitutionally harmed at the moment the Commonwealth retained outside counsel, Merck's argument that it was simply not convenient to protect its constitutional rights at an earlier time undermines its claims of irreparable harm.   Because Merck waited 11 months to complain of this allegedly "tainted" proceeding, it is not entitled to a finding of irreparable harm.   Merck's duplicity only confirms that its claims are about vexatious litigation and procedural fencing, not any purported constitutional injury.   RE#15 at pp. 31-34.

4

duties are satisfied when the government retains control over the litigation, as the AG has in *Merck I*. RE#17 at p. 24-27.

Although it undermines Merck's claim of "irreparable harm," Merck proffers its "neutrality" theory in an attempt to avoid the existing case law and satisfy pleading and standing requirements. There is one stumbling block: there is no constitutional right to litigate against "neutral" government lawyers.[2] Not a single case cited by Merck supports a constitutional right to litigate against "neutral" lawyers. In fact, these cases affirm the opposite: government lawyers should zealously represent their clients.

A.    Government Lawyers Should Zealously Represent Their Client and Have No Obligation to Remain Neutral.

Merck's argument that its constitutional rights are violated because the Commonwealth's lawyers should be "neutral" is not supported by the very cases Merck cites for that proposition. In advancing its tenuous theory, Merck relies on several parenthetical quotes from cases that deal with impartial tribunals, a government lawyer's duty to seek justice, rules of ethics, and the unique circumstances of public nuisance actions under California law. Not a single one of these cases suggests that the United States Constitution guarantees Merck the right to proceed against "neutral" lawyers in civil consumer protection actions.[3] On the contrary, the Supreme Court has expressly held that government lawyers must zealously represent their clients. In an adversarial system, those acting in a prosecutorial or plaintiff-like capacity are necessarily permitted to be

---

[2] Because Merck first suggested it had a right to litigate against "neutral" counsel in its Response, it is disingenuous for Merck to suggest that the Commonwealth "does not contest" this "right." RE#25 at p. 17. Its previous briefing argued that "delegation" was unconstitutional, not that the Commonwealth had to be "neutral."

[3] The only cases Merck cites that support a constitutional "neutrality" right involve tribunals, and Merck's repeated attempts to transform the universally accepted notion of a neutral tribunal into a constitutional right to "neutral" lawyers borders on misleading. Contrary to Merck's assertion, *Marshall* and *Grey* do not support the notion that it is "well established that the [impartial tribunal] rule [from *Tumey*] extends to plaintiffs and prosecutors." RE#28 at p. 18, *see also*, RE#2 Ex. 1 at p. 7. *Marshall* explicitly stated that the strict requirements of *Tumey* were not applicable in that case. 446 U.S. at 243. Merck repeatedly cites cases involving alleged bias related to judges, insinuating these cases support its "neutral lawyer" constitutional right. RE#28 at p. 5-8.

zealous in their enforcement of the law.  *See Young v. U.S. ex rel. Vuitton*, 481 U.S. 787, 807 (1987) (citing *Marshall v*, *Jerrico, Inc*., 446 U.S. 238, 248 (1980)).  "Prosecutors need not be entirely 'neutral and detached.'"[4]  *Marshall*, 446 U.S. at 248.  In fact government lawyers "may prosecute with earnestness and vigor—indeed, [they] should do so."  *U.S. v. Grey*, 422 F.2d 1043, 1046 (6th Cir. 1970).

In *Marshall*, the Court rejected the defendant's argument that the "neutrality" requirements from *Tumey* should apply to an agency employee whose power was "akin to that of a prosecutor or civil plaintiff."  *Id.* at 247.  Like the Attorney General and Outside Counsel in this case, the agency employee was "not a judge."  *Id.*  "He perform[ed] no judicial or quasi-judicial functions.  He hear[d] no witnesses and ruled on no disputed factual or legal questions."  *Id.*  The only time the *Marshall* Court references the notion of neutrality is in the context of judges; it expressly rejected the notion for prosecutors.  *Id.* at 242, 248, 250.  The only thing that is "well established" from *Marshall* is the fact that prosecutors have no duty of "neutrality."[5]  *Grey* gets Merck no closer to its contention.   *Grey* involved a deserved reprimand for a government lawyer who used racial bias in support of criminal prosecution.  422 F.2d at 1046.  While chastising the prosecutor for such abhorrent conduct, the Court declared that a government lawyer *should* prosecute with earnestness and vigor.  *Id.*

The additional arguments incorporated into Merck's Response also fail to establish its purported "neutrality" right.  In *Freeport-McMoran Oil & Gas Co. v. FERC,* the Court expressed its displeasure with a government lawyer who forced briefing and argument over the dismissal of

---

[4] Merck is certainly not entitled to a procedural protection in this civil proceeding that even criminal defendants are not entitled to—the supposed right to a "neutral" prosecutor.

[5] It is also important to recognize that *Marshall* involved a situation where the agency's employee determined the actual monetary amount of penalties that were enforceable absent an appeal.  446 U.S.at 240.  Accordingly, Merck's reliance on select quotes from dicta where the Court was discussing an "enforcement process" is unpersuasive.  *Id*. at 249-50.  Unlike the "administrative prosecutor" in *Marshall*, neither the Attorney General nor Outside Counsel can determine a penalty and enforce it; only a judge will have that authority.

orders where the government did not object to the dismissal. 962 F.2d 45, 47 (D.C. Cir. 1992). In its opinion dismissing the orders, the court noted that government lawyers have a duty to "seek justice" and not to continue "litigation that is obviously pointless, that could easily be resolved, and that wastes Court time and taxpayer money." *Id.*

In *Young*, the Court held that, as a matter of ethics, a lawyer appointed by a judge could not represent the government in a criminal contempt prosecution when the lawyer would owe an ethical duty to his other private client that would benefit from the outcome of the criminal proceeding. 481 U.S. at 806-807. Merck's suggestion that the Court was concerned about the personal interest of the lawyer is misleading. RE#2 Ex. 1 at p. 8. The Court was concerned about the ethics of a government attorney representing two parties in conflict. 481 U.S. at 804, 807. In this instance, applicable ethical rules require Outside Counsel to consider only the Commonwealth's interest in *Merck* I; in Merck I, the Commonwealth's interest is the public interest. RE#15 at p. 20 n. 19.

Finally, in *Clancy*, the California Supreme Court applied a "neutrality" principal to a lawyer representing a city only because of the unique interests involved in that public nuisance action. *County of Santa Clara v. Superior Court*, 235 P.3d 21, 30 (Cal. 2010). The Court reasoned that neutrality was required because "the abatement of a public nuisance involves a balancing of interests" of the public's right to be free of the nuisance and the right of the "landowner in using his property as he wishes." *Id.* at 30 (quoting *Clancy*, 705 P.2d at 749). The decision in *Clancy* was highly influenced by the circumstances of the case and by no means prohibited the government from using lawyers through contingent arrangements – even in public nuisance actions. *Id.* at 30, 32. Such a narrow holding based on California law does not support Merck's claim of a federal constitutional due process right to "neutral" lawyers.

7

Merck is asking this Court to create a new constitutional right: it is attempting to illegitimately apply the tribunal "neutrality" principle to plaintiffs and prosecutors.    There is simply no legal support for such a right, and Merck has provided this Court with no justification for finding contracts with outside counsel unconstitutional.[6,7]

> B.    Merck's "Neutrality" Theory Would Disqualify All Lawyers and Is Contrary to Years of Precedent.

In essence, Merck argues that any proceeding in which an outside lawyer has some interest tied to variables in the litigation would be unconstitutionally biased.  As an initial matter, it is hard to imagine what outside counsel this argument would not disqualify.  An attorney working on an hourly fee would have a compelling incentive to extend the litigation, creating unnecessary and expensive work for opposing counsel.   An attorney working under a flat-fee arrangement might harm the public interest because he or she would be incentivized to do as little as possible.  At the end of the day, "[a]lmost any fee arrangement between attorney and client may give rise to a conflict."  *Santa Clara*, 235 P.3d at 37.  But courts have routinely refused to assign nefarious motives to counsel, instead believing that, consistent with their ethical duties, "most attorneys serve their clients honorably despite the opportunity to profit by neglecting or betraying the client's interest." *Id.*

Historically, the United States government and many state governments have been represented by lawyers and relators in false claims litigation whose compensation is directly tied to the outcome of the litigation.  Numerous courts have rejected attempts to import the *Tumey*

---

[6] Merck's reliance on the Bush Administration's decision to eschew contingent contracts confirms that its argument is a policy argument and not one that implicates constitutional rights.   RE#28 at p. 20 n. 10.   The Bush Administration's Executive Order contained exceptions permitting the Attorney General to approve contingent contracts in limited situations, which hardly supports Merck's argument that such arrangements are unconstitutional. *See* Executive Order No. 13433, 72 Fed. Reg. 28,441

[7] This is true even in "quasi-criminal" cases.  Claims for "civil penalties" are civil in nature and do not entitle defendants to various criminal constitutional rights.  RE#26 at pp. 2-4.

"neutrality" standard into false claims act litigation.   In *Boeing*, the Ninth Circuit rejected Boeing's argument that the relator's financial interest in the litigation violated a prosecutor performing government functions duty to seek a just and fair result.  9 F.3d at 759.  The Court specifically rejected Boeing's reliance on *Marshall* and *Young,* noting that Boeing's argument that the "*Marshall* Court 'strongly suggested' that the Due Process Clause prohibits civil prosecutions by financially interested prosecutors [was] exaggerated, and does not support a finding of a due process violation."  *Id.* at 759.  Furthermore, the Court noted that *Young* was not a constitutional case and "involved *criminal* prosecution" which is different than "civil enforcement action[s] under the FCA."  *Id.*

        C.    There Are No Constitutional Concerns With Contingent Agreements When the Government Retains Control of the Litigation.

As the Commonwealth explained in its Motion to Dismiss, every court to consider a contingency fee arrangement between a government entity and outside counsel has held that there are no constitutional concerns when the government retains control of the litigation. RE#17 at pp. 20-27; *see also*, RE#15 at pp. 12-15.  In fact, this is the exact conclusion that was reached by the California Supreme Court when applying the principals of *Clancy* in *Santa Clara*.

        1.    *Santa Clara Confirms that, Under Clancy, There is No Concern Where the Government Retains Control of the Litigation.*

In *Santa Clara*, the California Supreme Court held that any fears of conflict a contingent-fee arrangement may create are assuaged if the litigation is controlled by government attorneys. 235 P.3d at 36.  *Santa Clara* involved public nuisance litigation against chemical manufacturers by government entities that hired outside counsel through contingent arrangements.  *Id*. at 26-27. The Court recognized that the concerns from *Clancy* were implicated.  *Id.* at 34.  However, when the important constitutional concerns from *Clancy*, *e.g.,*the defendants' and the public's

9

constitutional free-speech rights, the threat to ongoing business activity, and the threat of criminal liability, were not at issue, the Court held that the contingent-fee arrangements created no danger of governmental overreaching or economic coercion.[8] *Id.* at 32-33, 34-35. The Court concluded that in a case in which private counsel are subject to the supervision and control of government attorneys, the discretionary decisions vital to an impartial prosecution are made by the government, and the prosecution may proceed with the assistance of private counsel, even though the latter have a pecuniary interest in the case. *Id.* at 36-37.

2.      *The Commonwealth Retains All Control in the Merck I Litigation.*

Contrary to Merck's bald assertions in the Complaint, the Commonwealth retains all control over the *Merck I* litigation. RE#17 at p. 24-27. The Contract specifically states that the Commonwealth "retains the right *at all times to direct litigation in all respects.*" *Id.* at p. 4 (quoting Contract, Ex. A to Merck's Complaint). Merck has alleged no facts that make it plausible that, contrary to the contract attached to its complaint and ethical duties, the Attorney General has not asserted control.

**III.      Merck Has Not Satisfied Rule 8 and Cannot Establish Standing**

A.      Merck's Allegations of a Constitutional Violation Fail to Satisfy the Pleading Standards of *Twombly* and *Iqbal*

Merck alleges no facts that make it plausible that the Commonwealth has ceded control over the *Merck I* litigation. To satisfy Rule 8, Merck must "state a claim for relief that is

---

[8] Merck's attempt to extricate itself from the California Supreme Court's narrowing of *Clancy* is unpersuasive. RE#2 Ex. 1 at p. 10 n. 4. In its Preliminary Injunction Reply, Merck chastises the Commonwealth for citing the lower-court opinion in *Santa Clara*, which reached the same conclusion, and suggests that *Santa Clara* somehow supports its position. RE#20 at p. 4. As discussed above, *Clancy* and *Santa Clara* were decided under the unique circumstances of a public nuisance action. Furthermore, none of the unique issues from *Clancy* are present in *Merck I*. Also, the *Santa Clara* court noted that the *Clancy* case involved a "profound imbalance between the institutional power and resources of the government and the limited means and influence of the defendants." 235 P.3d at 32. There is no such concern in *Merck I*. Merck is a large corporation with access to abundant monetary and legal resources. If there is a profound imbalance of resources, it is in Merck's favor. RE#15 Ex. B.

10

*plausible* on its face." *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). "Plausibility is a context-specific inquiry, and the allegations in the complaint must 'permit the court to infer more than the mere possibility of misconduct,' namely, that the pleader has 'show[n]' entitlement to relief." *Id.* (quoting *Iqbal*, 129 S. Ct. at 1950). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Strader v. Kentucky Dept. of Fish & Wildlife Resources*, No. 3:09-cv-62, 2011 WL 181300, at *2 (E.D. Ky. Jan 19, 2011).

When evaluating the sufficiency of a constitutional violation alleged in a 1983 action, the court must consider whether the plaintiff has sufficiently alleged the elements of the purported violation. *Strader*, 2011 WL 181300, at *6 (considering whether the plaintiff sufficiently plead each element of a constitutional violation). Under *Twombly* and *Iqbal*, Merck has not plausibly alleged that the Commonwealth has delegated its prosecutorial authority to Outside Counsel. Instead of allegations that make it "plausible" that the Commonwealth has ceded control, Merck's Compliant simply alleges that conclusion as fact. *See e.g.*, RE#1 at ¶¶ 16, 17, 19, 20, 21, 22, 23. Of course, allegations that are conclusory are not entitled to be assumed true. *Iqbal*, 129 S. Ct. 1937 (citing *Twombly*, 550 U.S. at 554-55). The only non-conclusory allegations are that Outside Counsel has handled all appearances relating to *Merck I*, that no one from the Office of Attorney General has traveled to New Orleans, and that Outside Counsel has communicated with Merck's counsel after they were retained. *Id.* at ¶ 18.

These alleged facts do not make it plausible that the Commonwealth has ceded all control in this litigation to Outside Counsel. In *Napolitano*, the Sixth Circuit refused to accept as true plaintiff's allegations that the federal government had labeled them right wing extremist because

11

none of the bare allegations provided the factual context that would render them plausible and thus entitle them to a presumption of trust at this stage in the litigation.  648 F.3d at 373.  The same is true for Merck's allegations of the Commonwealth's failure to control the *Merck I* litigation.

Merck's recitation of facts merely confirms that Outside Counsel is representing the Commonwealth, and is hardly sufficient to plausibly allege that the Attorney General has allowed Outside Counsel to assume the lead role in prosecuting the action.  RE#28 at p. 16.  Like the plaintiffs in *Napolitano*, Merck provides no plausible statements as to when, where, in what, or by whom the Commonwealth has ceded control.  648 F.3d at 373.  Such a naked assertion devoid of further factual enhancement is not entitled to a presumption of truth.  *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949).  The Office of Attorney General is co-counsel in the *Merck I* litigation with Outside Counsel and is listed as an attorney of record in every filing before the Court.  The Office of Attorney General drafted and filed the Complaint in *Merck I*, including the prayer for civil penalties and litigated the action for a year prior to retaining Outside Counsel.  The unremarkable facts alleged by Merck do not establish a vast conspiracy of delegation and lack of control.  Instead, Merck's allegation of ceding control is not well-pleaded, and its conclusory nature disentitles it to the presumption of truth.  *Napolitano*, 648 F.3d at 375 (quoting *Iqbal*, 129 S. Ct. at 1951).

Merck provides no argument as to how it has sufficiently pled its claim.  Instead, it cites several cases for the proposition that Courts have denied government dismissals in 1983 actions.  RE#28 at p. 15.  But as shown in *Napolitano*, simply incanting the magic words "constitutional violation" does not satisfy the pleading requirements of *Twombly* and *Iqbal*.  In each case Merck relies on, the court outlined the elements of the alleged constitutional violation and then

discussed how specific factual allegations made by the plaintiff satisfied the requirements of Rule 8. Merck has simply failed to do that in this action.

B. <u>Merck Does Not Have Standing to Pursue Its Delegation Theory</u>

As outlined in the Motion to Dismiss, Merck's complaint fails to satisfy standing requirements. RE#17 at p. 8-17. Rather than explain how the claim asserted in Merck's Complaint satisfies these requirements, Merck's Response focuses on its "neutrality" argument. Merck argues that because it is exposed to an unconstitutional biasing influence, it has suffered injury sufficient to confer standing. RE#28 at p. 6. However, every case it relies on in support of this notion involved issues related to tribunals, not prosecutors. *See Fieger*, 471 F.3d at 643 (analyzing whether a fair hearing was available); *Caperton v. A.T. Massey Coal Co.*, 129 S. Ct. 2252, 2263 (2009) (analyzing the fairness of the tribunal); *Pashaian v. Eccelston Props., Ltd.*, 88 F.3d 77, 83 (2d Cir. 1996) (analyzing the potential bias of a judge); *Esso Standard Oil Co. v. Lopez Freytes*, 467 F.Supp.2d 156, 162 (D.P.R. 2006) (evaluating the fairness of a tribunal). Furthermore, Merck claims that because its complaint raises a pure question of law the issue is ripe.

Merck's claimed "neutrality" right does not exist. Accordingly, Merck has suffered no purely legal constitutional violation that would satisfy the standing requirements. *See White v. U.S.*, 601 F.3d 545, 555 (6th Cir. 2010) (rejecting standing where alleged injury was not a constitutional violation). Merck has provided no explanation of how its claim of an increased risk of overzealous prosecution is an injury-in-fact sufficient to satisfy the constitutional standing requirements. *See* RE#17 at p. 10-12.

The Commonwealth also disputes that Merck can show that any injury-in-fact was proximately caused by the Attorney General such that the second factor in a standing analysis

13

would be satisfied. Merck alleges that Outside Counsel's pursuit of civil penalties amounts to a biasing influence. But civil penalties will only be awarded against Merck *after* its liability under the KCPA is proved to a jury. After a jury finds liability, the issue of civil damages be presented to a neutral tribunal, a Kentucky Circuit Judge. At that point, the Commonwealth and Merck will litigate the issue of *how many* penalties to assess. Importantly, the number of penalties assessed is not arrived at in the abstract: numbers are not proffered out of thin air, or from Outside Counsel's imagination. Furthermore, Outside Counsel will have no discretion to advance a quantitative argument for penalties without the approval of the Attorney General. The penalties that are ultimately assessed are empirically and intrinsically linked to *Merck's own conduct* found by a jury to be violative of the KCPA. The Commonwealth is at a loss of just how, exactly, civil penalties assessed against Merck *based on its own illegal conduct* would be proximately caused by any alleged bias of the Commonwealth's Outside Counsel. Any injuries to Merck, if they can even be described as such, resulting from an assessment of civil penalties would not solely result from Attorney General's contingent contract with Outside Counsel. Merck's own illegal conduct in marketing Vioxx would surely be a consequential cause, as would its own counsel's ability to persuasively (or not) argue for a lower assessment before a Kentucky Circuit Judge. This tenuous chain of events veers into speculation and conjecture. Merck's "injury" and the cause of that alleged injury rest on a string of actions the occurrence of which is merely speculative. *See White*, 601 F.3d at 552-554. Merck does not have standing.

14

## <u>CONCLUSION</u>

For the foregoing reasons, the Attorney General respectfully requests that its Motion to

Dismiss be granted.

Respectfully submitted,

JACK CONWAY
ATTORNEY GENERAL

/s/Sean Riley_____
Sean Riley
Assistant Attorney General
Office of the Attorney General
700 Capitol Avenue, Suite 118
Frankfort, Kentucky 40601
(502) 696-5300

Todd E. Leatherman
Executive Director
Maryellen B. Mynear
Litigation Branch Manager
Elizabeth Ungar Natter
Assistant Attorney General
Office of Consumer Protection
Office of the Attorney General
1024 Capital Center Dr., Suite 200
Frankfort, KY  40601
(502)  696-5389

15

## <u>CERTIFICATE OF SERVICE AND NOTICE OF ELECTRONIC FILING</u>

I hereby certify that on October 27, 2011, I electronically filed the foregoing Reply with the clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Susan J. Pope
250 West Main Street, Suite 2800
Lexington, Kentucky 40507-1749

Winston E. Miller
400 West Market Street, 32d Floor
Louisville, Kentucky 40202

Attorneys for Defendant Merck & Co.


/s/Sean Riley_____
Assistant Attorney General

16